IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:24-cv-432

| | |
|---|---|
| DANIEL BYRAM ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | |
| ) | **JURY TRIAL DEMANDED** |
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Daniel Byram ("Plaintiff") brings this Complaint against Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant")) for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*; Breach of Contract; Conversion; and North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1 *et seq.*—all arising out of Wells Fargo's failures to investigate several high dollar unauthorized transactions from Plaintiff's checking account with Wells Fargo, return the unauthorized funds, and provide sufficient explanation of its investigative findings, in violation of the EFTA.

## THE PARTIES

1. Plaintiff Daniel Byram ("Mr. Byram" or "Plaintiff") is a natural person who resides in Lexington, North Carolina 27295, and is a "consumer" as that term is defined in 15 U.S.C. § 1693a(6).

2. At all times relevant, Plaintiff's account was used for personal, family, or household purposes and constitutes an "account" as defined by 15 U.S.C. § 1693a(2).

3. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a "financial institution" as defined in 15 U.S.C § 1693(9). Wells Fargo is a national bank regularly engaged in the business of electronic fund transfers between consumer accounts as defined in 15 U.S.C. § 1693(7).

**JURISDICTION**

4. The Court has federal question jurisdiction conferred by 28 U.S.C. 1331 and 15 U.S.C. § 1693m(g), which allows claims under the EFTA to be brought in any appropriate court of competent jurisdiction.

5. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) since a material portion of the events or omissions giving rise to the claim occurred in this District, and Wells Fargo regularly conducts business here.

**FACTS**

7. On January 31, 2024, Mr. Byram's personal Wells Fargo checking account (#7178) was fraudulently accessed without his permission or authorization. Three (3) transactions via the "Bill Pay" service through Wells Fargo were submitted to a "Tractor Olek" for $8,790.00, $8,795.00, and $8,798.00 without his authorization.

8. On February 1, 2024, another, fourth unauthorized transaction of $8,798.00 was fraudulently made to "Tractor Olek."

9. Lastly, on February 5, 2024, through his new account (#0924) that Wells Fargo had unilaterally opened after closing his previous checking account, a fifth unauthorized transaction was submitted to "Tractor Olek" for $8,798.00.

10. Mr. Byram received only one email communication from Wells Fargo on February 1, 2024 for only one of the three (3) January 31 unauthorized transactions.

11. Mr. Byram received one email communication from Wells Fargo on February 2 for the February 1 unauthorized transaction.

12. Mr. Byram never received email communications for the other two (2) January 31 and February 5 unauthorized transactions.

13. The February 2 email communication prompted Mr. Byram to contact Wells Fargo's Fraud Department by phone to dispute this unauthorized transaction. On February 2, 2024, Mr. Byram spoke to a Wells Fargo representative and was able to place a stop payment on the February 2 unauthorized transaction and disputed all five (5) unauthorized transactions.

14. However, this stopped payment was reversed or canceled, without Mr. Byram's knowledge or consent, and the February 2 unauthorized transaction was taken out of his account again.

15. On February 5, 2024, Wells Fargo mailed Mr. Byram a letter requesting further information and to return an enclosed "Affidavit of Online Fraud" form within 10 business days from date of letter.

16. On February 16, 2024, within 10 business days of Wells Fargo's request, Mr. Byram mailed to Wells Fargo the completed Affidavit of Online Fraud form.

17. However, on February 7, 2024, prior to its own 10 business days deadline, and prior to receipt of Mr. Byram's Affidavit, Wells Fargo mailed Mr. Byram a claim denial letter stating that it had "finished researching your fraud claim regarding online transactions totaling

$35,181.00[1] on your account ending in 7178." Ultimately, Wells Fargo denied Mr. Byram's dispute and closed his claim with the following reasoning:

> "Our research shows the transactions were made through a secure online banking session by you or someone who had your authority and that no other processing errors occurred. Based on this information, we determined the transactions were authorized. We have closed your claim."

18. On February 20, 2024, Wells Fargo emailed Mr. Byram confirmation of his dispute for the fourth unauthorized transaction from February 1 for $8,798.00 on his new account (#0924) and Wells Fargo stated it was currently investigating and would respond to Mr. Byram within 10 business days.

19. On March 4, 2024, Wells Fargo emailed Mr. Byram stating it needed further time to complete its investigation and would respond by March 11, 2024.

20. On March 6, 2024, Wells Fargo emailed Mr. Byram that it has completed its research and once again determined that four (4) unauthorized transactions totaling $35,181.00[2] were in fact "authorized by you or someone you authorized through a secure online banking session. This claim will remain denied."

21. Having exhausted his efforts, and growing further impatient and frustrated, Mr. Byram contacted undersigned counsel to assist him with this matter.

22. On March 7, 2024, Mr. Byram, through undersigned counsel, sent another dispute letter to Wells Fargo providing a timeline of events and requesting all documents and notes in

---

[1] There are five (5) unauthorized transactions totaling $43,979.00.

[2] Once again, Wells Fargo is inaccurately investigating/reporting that only four (4) unauthorized transactions were disputed when in fact Mr. Byram disputed all five (5).

Page **4** of **14**

Wells Fargo's possession regarding these fraudulent transactions and Wells Fargo's investigation(s).

23. On March 8, 2024, Wells Fargo email undersigned counsel acknowledgment that it had received the March 7 dispute letter.

24. On March 20, 2024, Wells Fargo emailed undersigned counsel a letter stating the same explanation of its reinvestigation research and determination that "the transactions were made thought a secured online banking session on a known device and we found no error in the handling of the claim."

25. On March 22, 2024, Wells Fargo mailed a letter to Mr. Byram, not undersigned counsel, enclosing the documents it used to make its decision on the denied claim. These documents included information related to the date, time, username, "auth status", IP address, ISP (internet service provided), and "WF Device ID."

26. The documents provided clearly show Mr. Byram's IP address to be 174.111.198.3, his ISP of "charter communications inc.", and his home address of Greensboro, North Carolina.

27. These documents also show that on the dates of the disputed, unauthorized transactions (i.e. January 31 and February 1), the IP address listed is 172.56.121.70 through the ISP "t-mobile usa inc." out of California.

28. Mr. Byram does not use the internet service provider T-Mobile USA nor was he in California during those dates of the disputed, unauthorized transactions.

29. Mr. Byram does not know a "Tractor Olek" and did not derive any benefit from these unauthorized transactions. Rather to the contrary, he has been without $43,979.00 of his hard earned and saved money.

30. In the Affidavit of Online Fraud from he submitted on February 16, Mr. Byram swore out that he had not clicked on any suspicious pop-ups or emails, had not shared his banking password or username, did not authorize anyone else to handle his finances, did not recently lose or have stolen mail, account statements, or ATM cards, and that he did not know who might have committed this fraud.

31. Mr. Byram is sixty-eight years old and currently still works in order to save for retirement. He uses his account for making car payments, paying credit card bills, utilities, and day-to-day living expenses. Mr. Byram also saves for emergencies and auto repairs.

32. Mr. Byram spent approximately 6-10 hours on the phone with Wells Fargo disputing these unauthorized transactions.

33. In addition, Mr. Byram has spent dozens of hours researching how this could have happened and ways to avoid it ever happening again. Mr. Byram has researched and contacted numerous agencies including the FBI, BBB, FTC and North Carolina Office of Attorney General.

34. As a direct and proximate result of Wells Fargo's acts and omissions, Mr. Byram has suffered financial and emotional harm, including loss of sleep, depression, anxiety, stress, frustration, aggravation, inconvenience, and distress.

35. To date, Wells Fargo has refused to refund Mr. Byram for these five (5) unauthorized transactions totaling $43,979.00.

**CLAIMS FOR RELIEF**

**COUNT I**
**Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693** *et seq.*

36. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

37. The primary objective of the EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

38. Wells Fargo is a financial institution. 12 C.F.R. § 1005.2(i).

39. Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." Id. § 1693f(f).

40. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1).

41. Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. 1005.2(m).

42. A consumer's liability for an unauthorized transfer (or a series of related unauthorized transfers, 12 C.F.R. § 1005.6(b)), may not exceed $50. 15 U.S.C. § 1693g.

43. Wells Fargo has violated 15 U.S.C. § 1693f of the EFTA, which governs resolutions of errors such as the one set forth herein.

44. Specifically, Wells Fargo failed to conduct a reasonable investigation of the four (4) unauthorized funds transfers following notice from Mr. Byram and failed to credit or return the unauthorized funds in violation of 15 U.S.C. § 1693f.

45. As set forth above, Wells Fargo was notified of the unauthorized transfers timely (multiple times).

46. Wells Fargo failed to provide Mr. Byram with a provisional recredit of his account as required under 1693f(c).

47. Wells Fargo violated the EFTA by holding Mr. Byram liable for the unauthorized transfers for more than $50 (i.e. $43,979.00). 15 U.S.C. § 1693g; § 1693m(a).

48. Wells Fargo did not make a good faith investigation of the unauthorized transfers and did not have a reasonable basis for believing that Mr. Byram's account was not in error.

49. Wells Fargo neglected to provide Mr. Byram with a sufficient explanation of its findings for denying his disputes, in violation of 1693f(d).

50. Accordingly, Mr. Byram is entitled, *inter alia*, to treble damages pursuant to 1693f(e).

51. Moreover, Wells Fargo knowingly and willfully concluded that Mr. Byram's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation, again entitling Mr. Byram to treble damages pursuant to 1693f(e).

52. As a direct and proximate result of Wells Fargo's acts and omissions, Mr. Byram has been without the use of his $43,979.00, causing financial strain and burden, frustration, aggravation ,stress, and inconvenience.

53. As a direct and proximate result of Wells Fargo's violations of the EFTA, Mr. Byram is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs, and reasonable attorney's fees. *See* 1693f, 1693g, and 1693m.

## COUNT II
## Breach of Contract

54. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

55. Mr. Byram's account with Wells Fargo is subject to a Deposit Account Agreement (hereafter, "WF Agreement").

56. The WF Agreement states in relevant part that "[i]f you tell us within two business days after you learn of the loss or theft of your card, card number, PIN, or other access device, you can lose no more than $50 if someone used your credentials without your permission… If you do NOT tell us within two business days after you learn of the loss or theft of your card, card number, PIN, or other access device, and we can prove we could have stopped someone from using your credentials without your permission if you had told us, you could lose up to $500…"

57. Mr. Byram did notify Wells Fargo within two business days of these unauthorized transactions.

58. However, Wells Fargo did not limit Mr. Byram's liability to only $50.

59. *In arguendo*, Mr. Bryam did not notify Wells Fargo within two business days, he was still held liable for over $500 (i.e. the full $43,979.00 in unauthorized charges).

60. This breach has caused Mr. Byram actual damages (including, *inter alia*, the $43,979.00 that was fraudulently taken).

61. Wells Fargo is therefore liable for Mr. Byram's losses and damages, as a matter of contract regardless of its liability under any other theory, cause of action, or statute.

62. Also, as a result of these breaches of contract, Wells Fargo is liable for costs and interest.

## COUNT III
## Conversion

63. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

64. Mr. Byram had a possessory right to the funds in his accounts.

65. Under the circumstances set forth herein, the funds constituted personal property.

66. Wells Fargo intentionally, and without authority, assumed and exercised control over Mr. Byram's funds.

67. Wells Fargo knew or should have known that it had no authority or interest in the funds.

68. Mr. Byram did not consent in any manner to Wells Fargo's taking of the funds. Wells Fargo's conduct was not privileged nor justified.

69. Wells Fargo's dominion over the funds and interference with the funds was in derogation of Mr. Byram's rights, including but not limited to Mr. Byram's right to have the funds returned to him.

70. Wells Fargo's actions were intentional, deliberate, willful, wrongful, oppressive, reckless, and with such disregard of the rights of Mr. Byram as to constitute legal malice (although not based on actual hate). Despite Mr. Byram's repeated attempts to regain possession of his funds, Wells Fargo simply ignored and continued to deprive him of his rightful use of his property.

71. As a result of Wells Fargo's actions, Mr. Byram suffered actual damages, including but not limited to the amount of the funds converted.

72. Wells Fargo's actions in taking and interfering with Mr. Byram's funds, when it had no right to do so, constituted the tort of conversion, entitling Mr. Byram to recover among other things, compensatory damages, punitive/exemplary damages, and costs.

## COUNT IV
### Unfair and Deceptive Trade Practices Act

73. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

74. At all times relevant, Wells Fargo's actions, practices, and conduct was engaged in and affecting commerce in the state of North Carolina under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1 et seq.

75. Wells Fargo violated the UDTPA by utilizing unfair, coercive, false, deceptive, unfair and misleading practices, actions, and representations in connection with the unauthorized funds.

76. Wells Fargo's complete failure to investigate, remedy, and correct their mistakes with respect to the the unauthorized funds was wholly unfair, coercive, and deceptive.

77. Wells Fargo has continued the unfair, coercive, false, and decpetive actions by failing to return the the unauthorized funds, despite repeated attempts by Mr. Byram to remedy Wells Fargo's unlawful actions.

78. Wells Fargo's actions as described hereinabove are knowing and willful, offend established public policy, unethical, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead. This was demonstrated by their continued refusal to investigate, remedy, or correct their mistakes, and to comport their behavior to applicable North Carolina law. The actions, pattern of conduct, and methods employed by Wells Fargo was, in addition, patently unfair when judged against its profit-incentivized motive, intention, and the extremely negative effects that their actions and conduct have upon the average ordinary North Carolina citizens and consumers, including the Plaintiff.

79. The unscrupulous, immoral, unfair, misleading, and deceptive actions and conduct of Wells Fargo, as set forth herein, proximately caused economic injury to Plaintiff, is in and effecting commerce and has the capacity to deceive ordinary North Carolina consumers.

80. Wells Fargo's actions and pattern of conduct, constitute unfair and deceptive acts or practices pursuant to Chapter 75 of the North Carolina General Statutes. Those actions as detailed herein, offend established public policy, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to North Carolina consumers and include, but are not limited to the following:

a. Failing to return the the unauthorized funds;

b. Failing to investigate, correct, or remedy their mistakes with respect to the the unauthorized funds;

c. Failing to act as a reasonably prudent financial institution, creditor, and other business entity would under the same or similar circumstances; and,

d. Engaging in fraudulent, misleading, and/or deceptive actions and conduct.

81. Wells Fargo's conduct proximately caused injury to Plaintiff in that he suffered financial loss, anxiety, frustration, anger, annoyance, and emotional distress.

82. As a direct and proximate result of Wells Fargo's unfair and/or deceptive acts and practices, in or affecting commerce, Plaintiff is entitled to recover treble damages from Wells Fargo, pursuant to N.C.G.S. § 75-16, and to recover his reasonable attorneys' fees and costs as provided for in N.C.G.S. § 75-16.1.

## COUNT V
## Punitive Damages

83. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully stated herein.

84. Wells Fargo is also liable for punitive damages in that it conducted its wrongful behavior described herein willfully, intentionally, maliciously, and/or with a reckless and conscious disregard for Plaintiffs' rights and interest.

Page **12** of **14**

Case 1:24-cv-00432   Document 1   Filed 05/24/24   Page 12 of 14

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in his favor and damages against Defendant:

a) Determining that Defendant negligently and/or willfully violated the EFTA;

b) Awarding Plaintiff actual, statutory, and treble damages as provided by the EFTA and NCUDTPA;

c) Awarding Plaintiff his actual damages and costs for breach of contract and conversion;

d) Awarding Plaintiff reasonable attorney's fees and costs as provided by the EFTA and NCUDTPA;

e) Award Plaintiff punitive damages; and

f) Granting such other and further relief, including equitable and declarator relief, as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues triable by jury.

Dated: May 24, 2024

*/s/ Karl S. Gwaltney*
Karl S. Gwaltney
NC State Bar No. 45118
Ian E. Vance
N.C. State Bar No. 60056
**MAGINNIS HOWARD**
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:    919-526-0450

Fax: 919-882-8763
kgwaltney@carolinalaw.com
ivance@carolinalaw.com

*ATTORNEYS FOR PLAINTIFF*